O'Horo, d. b. a. O'Horo Realty, Appellant, *v.* Ohio Real Estate Comm., Appellee.

[Cite as O'Horo v. Ohio Real Estate Comm., 4 Ohio App. 2d 75.]

(No. 7353—Decided February 18, 1964.)

*Mr. William M. Gemmill,* for appellant.

*Mr. William B. Saxbe,* attorney general, and *Mr. James M. Dunphy,* for appellee.

Duffey, J. This is an appeal from a judgment of the Common Pleas Court of Franklin County in an appeal to that court under the Administrative Procedure Act, Section 119.12, Revised Code. Appellant, O'Horo, is a licensed real estate broker. The Ohio Real Estate Commission found him guilty of three violations of Section 4735.18, Revised Code, and ordered a 30-day suspension of his broker's license. The Common Pleas Court affirmed the order of the commission.

The basic facts are not in controversy. O'Horo obtained an exclusive contract with one Philip Holbrook to sell the Holbrook residence at a listed price of $13,500. The contract was executed April 20, 1961. It had a time period of 90 days and, therefore, expired on July 20, 1961. Within the contract period, one of O'Horo's licensed salesmen took a prospect, John Hileman, to see the house. They did not see the interior, nor did they contact the Holbrooks. No notice of this prospect was given the Holbrooks during the contract period nor until after the time in question here. There is evidence that prior to the contract expiration date, the Holbrooks were contacted by O'Horo's salesman for an extension of time, that no written ex-

tension was given, but that oral permission was given to continue their efforts to find a buyer. Holbrook's testimony does not directly support or refute the granting of such permission.

On July 24, 1961, Holbrook executed an exclusive listing contract with another brokerage firm, Irion & Dill. Mrs. Holbrook did not sign that contract. No notice of this contract was given O'Horo or his salesman by either the Holbrooks or Irion & Dill. No Irion & Dill sign was placed upon the premises. On July 27, another of O'Horo's salesmen, a Mr. Lynch, again showed the property to Hileman. The uncontroverted evidence is that Mrs. Holbrook permitted the salesman to show the home to Hileman around noon, and that Mrs. Holbrook said nothing about the listing contract between Mr. Holbrook and Irion & Dill. Hileman and the salesman returned to O'Horo's brokerage office and worked out an offer. Hileman executed an offer at $14,000. The salesman telephoned and talked to Mrs. Holbrook and arranged a meeting to present the offer that evening. The salesman and Hileman then went to Holbrook's home about 11:00 p. m. to present the contract offer. Upon entering the home, the salesman found Mr. Holbrook on the telephone talking to a Mr. Rapp who was a salesman associated with Irion & Dill. This was the first notice to O'Horo's salesman or anyone connected with O'Horo Realty that Irion & Dill had any interest in the Holbrook home. Holbrook informed Lynch of the Irion & Dill contract and asked him to speak to Rapp. Lynch and Rapp both testified that Rapp assured Lynch that Irion & Dill would "cooperate" on the sale. Lynch testified that he stated he could not agree to that without talking to O'Horo, that "this is a matter for our brokers to take care of." Rapp could not recall anything except offering to co-operate, but he did not deny Lynch's testimony.

After the telephone conversation, Lynch presented the Hileman offer to the Holbrooks and they accepted it in writing. Lynch was a fireman and a part-time salesman. This was his first sale. Although five copies of the contract were executed, he did not give one to the Holbrooks. The only explanation he offered was that he was "pretty confused" and wanted to "talk to my broker."

Within a day or two after, Holbrook asked O'Horo for a copy of the contract. O'Horo refused and did not furnish one

until August 14, 1961. O'Horo's explanation of the refusal is not clear. Apparently the refusal was compounded of (1) a belief or hope that Hileman fell within the "procuring clause" of the contract applicable to prospects brought to the owner before the expiration of the exclusive listing, (2) the idea that perhaps Irion & Dill were Holbrook's agents and should handle any direct dealing with him, and (3) the fact that he was never shown the Irion & Dill contract and wasn't so sure he had to "co-operate" on the commission.

O'Horo was charged and found guilty of paragraphs (F), (S) and (Y) of Section 4735.18, Revised Code. As effective at the time in question, the pertinent portions of the statute provided:

"The state board of real estate examiners may, upon its own motion, and shall, upon the verified complaint in writing of any person, investigate the conduct of any licensee and may suspend or revoke or refuse to renew any license at any time where the *licensee,* in performing or attempting to perform any *act as a real estate broker or real estate salesman* * * * or in any transaction involving the leasing or sale of an interest in real estate, is guilty of any one of the following:

"* * *

"(F) Any other conduct which constitutes dishonest dealing or any gross negligence, incompetency, or misconduct in his practice as a licensed real estate broker or salesman;

"* * *

"(S) Having negotiated the sale, exchange, or lease of any real property directly with an owner or lessor knowing that such owner or lessor had a written outstanding contract granting exclusive agency in connection with such property with another real estate broker;

"* * *

"(Y) Failure of a broker to furnish all parties involved in a real estate transaction true copies of all listings and other agreements to which they are a party, at the time each party signs the same * * *." (Emphasis added.)

The present case is not concerned with the liability of the licensee Lynch. The proceedings in this case concern O'Horo only. It is apparent that O'Horo had no personal part in the execution of the contract of sale. He was not personally pre-

sent, nor did he have any knowledge that his salesman was negotiating the sale. He had no personal knowledge of the Irion & Dill listing prior to the execution of the contract of sale. He obviously had no personal part in the failure to give the Holbrooks a copy at the time the parties signed the contract.

The Attorney General has argued that the statute imposes strict liability on the broker for the act of any salesman employed by him regardless of the broker's personal innocence. In our opinion, neither the present wording nor the history of this statute supports such a harsh view. The disciplinary statute involved here is quite different in purpose and effect from personal liability on a licensee's bond. Section 4735.12, Revised Code. The bond statute is concerned with *damages* suffered by a seller, purchaser or other person as a result of misconduct of the brokerage "business."

The brokerage business involves two classes of licensees. The first is a broker, who may be an individual, a partnership, an association or a corporation. The other is a salesman, who can be only an individual. The disciplinary statute applies, not to the conduct of the business as such but specifically by its terms to the "licensee." A violation consists of an "act *as* a real estate broker *or* real estate salesman." On its face, it thus recognizes the two classes of licensees, and prohibits certain acts as a licensee. Nowhere does it suggest that a licensee is accountable for someone else's acts as opposed to his own.

It should be observed that several individually licensed brokers may together obtain a broker's license to do business as a corporation, partnership, or association. Sections 4735.01, and 4735.08, Revised Code. Under the Attorney General's view, the disciplinary statute would make each individual broker and the brokerage firm subject to revocation and suspension for the act of one individual broker or salesman in a firm. Since salesmen's licenses are automatically suspended with that of the employing broker, presumably the act of one member of an organization would mean that all licenses could be suspended or revoked, *i. e.,* that of the firm, several individual brokers and all salesmen. Such a view, in our opinion, is not supported by the statutory language.

The legislative history of Section 4735.18, Revised Code, does not strengthen the Attorney General's position. The last

paragraph of the original act provided that the conduct of a salesman "shall not be imputed to his employer without proof of guilty knowledge on the part of such employer." 111 Ohio Laws 392, 399 (1925). This paragraph was deleted by amendment in the following legislative session. 112 Ohio Laws 262, 265 (1927). However, in 1931 the statute was again amended. The first paragraph was changed by adding the present phrase limiting responsibility to an "act as a real estate broker or real estate salesman or in any transaction involving the leasing or sale of an interest in real estate." 114 Ohio Laws 106, 107 (1931).

Accordingly, in our opinion, the act of a salesman in violation of Section 4735.18, Revised Code, is not of itself a basis for disciplinary proceedings against the employing broker.

The first charge against appellant is a violation of subparagraph (F). That paragraph concerns "dishonest dealing or any gross negligence, incompetency, or misconduct." It goes only to some failure to fulfill a duty imposed on a licensee by the statutes. There is no evidence of any such failure by the appellant O'Horo.

The second charge was under subparagraph (S)—negotiating a contract of sale directly with an owner "knowing" of an outstanding written exclusive listing contract. This charge goes to the act of negotiating with Mr. Holbrook as a part-owner. On the evidence, it is apparent that the appellant, O'Horo, had no personal responsibility whatsoever for the dealings with Holbrook. Accordingly, there is no evidence to support a violation by this appellant.

The third charge was under subparagraph (Y). Appellant was notified of that charge in a "notice to licensee" sent by the commission on July 11, 1962. Appellant then requested a hearing pursuant to Section 119.07, Revised Code. The commission was required to and did send appellant notice of the hearing in a notice dated July 23, 1962. However, the only charges specified for hearing are subparagraphs (F) and (S). Subparagraph (Y) is omitted. Further, the commission in its order applied the amended statute as enacted in October 1961 rather than the properly applicable one. As in effect at the time, the statute dealt with the "failure of a broker" to furnish a copy of the agreement to the owner "at the time each

party signs the same." Since O'Horo was not present and did not know anything about the transaction at the time it occurred, he can hardly be held personally responsible for the failure to give Mr. Holbrook a copy "at the time." See, also, Section 4735.16, Revised Code. 126 Ohio Laws 378, 380.

The appellant may perhaps have violated the spirit of the law and common sense when he subsequently refused to provide Holbrook with a copy of the contract. His reasons reflect too much concern with the commission and not enough with Holbrook's interests. On the other hand, the transcript at several points appears to contain suggestions that appellant should have "co-operated" with Irion & Dill, *i. e.*, split the commission. That may be considered "cricket" or customary within the brokerage business. However, there was no obligation under the statute to so co-operate.

The judgment of the Common Pleas Court is, therefore, reversed.

*Judgment reversed.*

BRYANT, P. J., and TROOP, J., concur.